All right, the next case for argument is United States v. Coffman, DACA 23-7058. Counsel, when you're ready. Thank you, Your Honor. May it please the Court, Kristen Kimmelman for Stuart Wayne Coffman. Mr. Coffman challenges his conviction on the second-degree murder count because there was insufficient evidence to prove beyond a reasonable doubt that he, in fact, had killed Mr. Joe Patiste. He was also convicted of an aggravated assault count. Both events stem from a gathering of people on his front porch on a Thursday evening. Now, as the district court recognized, this case was built entirely on circumstantial evidence, and so the government's job was to bridge the gap from the Thursday night assault to Mr. Patiste's body being discovered on Saturday morning. It was about a gap of 36 to 40 hours, and they tried to fill that gap with circumstantial evidence and inferences from that. But in order to do so, all of those inferences had to be reasonable and a product of logistical and probabilistic reasoning, not speculation or conjecture. Counsel, can I challenge that characterization for a moment? How do you wrestle with the testimony of the Joneses, where I believe Mrs. Jones testified that she saw Mr. Kaufman hit the victim with a pipe six times, and Mr. Jones testified he heard but did not see the hitting of the victim with the pipe? Why is that circumstantial evidence and not just direct evidence that— That is direct evidence of an aggravated assault, and that certainly is evidence that Mr. Kaufman hit Mr. Patiste, but not that those injuries caused his death. Now, the evidence that was at the scene was that there were ten droplets of blood splattered on the front porch. The largest size of that droplet was a dime-sized amount of blood. The Joneses left, so we don't know what happened after those six pipe hits, and she didn't see exactly where Mr. Patiste was being hit by that. The medical examiner's report does detail blood force trauma and hemorrhaging and lacerations on many parts of the victim's body, and of course the pictures are in the record as well. That, to my mind, looks like a lot more than just six swings of the pipe. It seems like a pretty brutal event. So perhaps it's reasonable to infer that the assault continued, but only ten droplets of blood were on the front porch. Mr. Patiste's body was found Saturday morning behind the mobile home in an area that is very exposed and public and accessible, and there was not a trail of evidence leading from the front porch to the back area. Also, the blood evidence was different in its character. There were smears of blood on the PVC pipes and also on the wooden plank that were near Mr. Patiste back there. Again, he wasn't covered. You're not contending that he had to die on the front porch for the conviction to occur? Correct. I am not contending that he had to die then, but in order for us to believe that those injuries then caused his death and that resulted in him being found on Saturday, there needs to be reasonable inferences that lead to that result. Well, he was decomposing. Correct. He had missed work the next day even though he was a regular attender of work. That is true. The medical examiner said there was green discoloration and there was maggot activity, but we don't know from the medical examiner's testimony what is fair to draw from that. And you've seen the autopsy pictures of the crack across his entire skull? Yes, and that crack was not consistent with the side of a pipe. The medical examiner thought it could have been possibly consistent with the edge of a pipe or some other instrument creating that tool mark laceration in the skull. Again, that is not what Ms. Jones said that she saw as she was leaving Mr. Kauffman's home. And the Joneses came back. Just a few hours after this assault that they witnessed, they came back and hung out and stayed at Mr. Kauffman's house throughout most of the night. Let me ask you one piece of evidence and you can correct me on it. My understanding is Mr. Norris, who lived in the trailer behind the house, had lent the defendant a flashlight after the assault, heard the thump-thump, some sort of thump-thump, a gurgling, a please stop, yells, and then maybe 20 minutes later saw the flashlight and the defendant in the backyard near where the body was ultimately found. That's correct. By the Norris' account, they arrived back at Kauffman's property sometime after 10 p.m. that night. But that's not enough? That's not enough because it's a different event. What the Joneses saw was around 7 p.m. Well, how about he's just drug the victim back to the backyard and he has a flashlight trying to locate a good place to put them? Why would the jury not be entitled to infer that? I would submit that that inference is not reasonable because it would tend to mean that there must have been some premeditation if there is a voicing stop-stop by Batiste. And three hours after the earlier assault, Mr. Kauffman then beats him and drags him over there. What is the version that the jury should be compelled to believe then? That he was struck with the pipe multiple times, there was this gurgling sound after the flashlight, there was the stop-stop, and then the victim wandered off and someone else assaulted the victim and also hit him with blunt force trauma resulting in death? That's the version the jury would be compelled to believe? No, because again there's a great difference of time between what Mr. Norris heard and the lending of the flashlight and when the assault happened. And the jury did reject premeditation. So we do know that they rejected that first-degree murder charge. Now, Mr. Norris and his wife both testified. They came back after 10 p.m. The Joneses saw what they saw, they say around 7 p.m. because it was still light before there was dusk. Now, Mr. Norris knew that Kauffman used those PVC pipes for drainage from his property. They were part of the sewer system. And so sometime between 10 and 11 at night, Mr. Kauffman borrows the flashlight, he goes to the front of the property, and then they see him 20 minutes later in the back. There is this yelling of stop, stop. Could have been Mr. Kauffman, could have been someone else. Mr. Norris says after he learns about Mr. Batiste, oh, I think it was Mr. Batiste who says that. And so I think we do have to credit that that's what Mr. Norris believes he heard. As we sort of sort through the pile of evidence, what about the statements Mr. Kauffman made? One, in regards to the trailer being set afire, and as I understand the record, essentially confirming when asked, are you trying to destroy evidence? And then later, after he's arrested in the police car, I think, where he calls to Mr. Norris, I think, and says, you know, I messed up, I really messed up. I mean, as we're evaluating for sufficiency purposes, this sort of pile of evidence, aren't Mr. Kauffman's statements extremely relevant as well? So they are relevant, but I think it places a lot of weight to put on those statements to infer from, I messed up after his home caught on fire and a body was found in his backyard, that he is necessarily admitting to the guilt of having caused that death. It's not clear to me that he was actually arrested at that point. He did somehow have his cell phone, if we're to believe Mr. Norris's statement. The police were investigating matters because, of course, Mr. Kauffman, after this assault happened on Thursday evening, calls the police for them to come back out to the property. Officer Walden arrives at the property around 1045, not clear if the Norris's were there or not at this time, and talks to Mr. Mooney, talks to Mr. Kauffman, sees droplets of blood and doesn't think much of it. Mr. Kauffman, if he were to have moved the body, which I assume is a possible theory for the government, for some reason moved it to the side of his home where you can see the road, where you can see the Norris's camper, leave it uncovered, when pictures of the property show that there's a wooded area not very far from where the body was left. It seems like it would have been a much more reasonable choice to have hidden that body in the wooded area if that was in fact what Mr. Kauffman was trying to do. Could a reasonable jury have convicted on this basis? Mrs. Jones saw him hit, saw Mr. Kauffman hit the victim six times in the head with a pipe. The victim didn't go to work the next day and nobody saw the victim the next day, despite the fact that he didn't ever miss work. And they found his body the next day in a decomposing condition in the backyard. I think that gets closer because in that situation, Mrs. Jones saw the hits to the head. Well, she did, didn't she? She saw the hits to Mr. Batiste and she heard clinks. She says she didn't know where he was hitting around or certainly that all six were at the head. And the other part that I think that is important for this court's consideration is looking at the evidence in its entirety, not just the pieces of evidence that support the government's theory, but all the evidence that was presented. And that's what this court did in Summers. What's the exculpate? I mean, if we're looking at other evidence, I mean, wouldn't we want to look and see? I mean, the idea would be we're going to look and see if there's any exculpatory evidence over what I told you the evidence was. So, I mean, what about things that have changed is exculpatory? So, not necessarily... That creates doubt. Right, exactly. So, the evidence that creates doubt is, again, that this is a public area, that there are at least three others that we know had some sort of beef with Mr. Batiste. And that's Mr. Mooney and also the Joneses, because there was another altercation that Thursday evening before any assault by Mr. Coffin, and that was the altercation between Mr. Mooney and Batiste. And that was sparked because Mr. Batiste got fresh, basically, with Ms. Jones, and Mr. Mooney took offense to that. Ms. Jones had recently gotten married to Mr. Jones, and those individuals all come and go from that trailer area and the camper area. Okay, but we have evidence that Mr. Coffman hit him with a pipe. We have no evidence that any of the other people inflicted any kind of serious wounds on him. There? Almost. We do have some evidence that he suffered injuries from the altercation with Mr. Mooney. All right. You're not contending, though, that those injuries would have been life-threatening? No. I think that none of those injuries would have actually caused the death of Mr. Batiste. Right. I'm just concerned that when we look at what you're talking about, it requires us to draw the inferences from the body of facts in favor of the defense.  The court's job would be to make sure that the inferences drawn from the evidence and lie most favorable to the government are in favor of the verdict, but just that those inferences have to be reasonable. And that is the body of the law. But I think that reasonableness requirement is important because it's still the government's burden to prove that Mr. Coffman killed Mr. Batiste beyond a reasonable doubt. And each element of that is important in this inquiry, and there is some limit to what sort of inferences can be drawn. Were the findings in the opinion of the medical examiner undisputed in this case? They were undisputed. There was no real contest about those medical findings. And, again, those findings had lacerations and abrasions over the leg and all over Mr. Batiste's body. And it was the medical examiner's report coupled with Ms. Jones' testimony and Mr. Willison's testimony about motive that the court thought would be enough, possibly for the jury to find first-degree murder meditation, and the jury rejected that. I'll reserve my time for rebuttal. Thank you. May I proceed? Please. May it please the court, my name is Benjamin Traster, and I represent the United States. The defendant argues that the evidence presented at trial was insufficient for the jury to find defendant guilty of second-degree murder and to prove defendant was the proximate cause of the death of the victim. But the defendant's argument does not follow from the holdings and the reasoning by this court in other cases that discuss what's required for sufficiency of the evidence, what the jury can do with circumstantial evidence, the inferences the jury can make, and the logical and probabilistic reasoning that a jury is allowed to use and that's required for a jury to reach a verdict and a finding of guilt. Thank you. The cases where this court has found that evidence was insufficient for a jury to find a defendant guilty all have essentially logical leaps in the inferences that the jury is able to make. And of course, that's what the defendant was just discussing a moment ago. The defendant was discussing the fact that you have to believe one witness one way or another, but the question is really whether or not a jury can make probabilistic and logical reasoning, inferences in their reasoning at arriving at a guilty verdict. I want to point out one fact which I think permeates a lot of the argument here, which is that the defendant doesn't actually contest the fact that he was guilty on count two of the assault with a dangerous weapon with the intent to do bodily harm. He admits, in essence, that there was an assault outside of that camper, outside of the defendant, Stuart Kaufman's camper. If there was that assault, the question becomes did that assault cause the death? And I think that there's quite a bit of evidence for the jury to have been able to find the defendant guilty and reach the verdict that they reached. As this court pointed out, you had two witnesses, Tabitha and Anthony Quint-Jones, who said that they heard, I'm sorry, this microphone, I apologize, it's squeaking for me, they saw the swinging of the pipe and they heard the pipe hitting the victim, Mr. Batiste. They also, I think they discount the testimony, the defendant discounts the testimony as well of Joseph Norris, who was living at the time with his wife in the nearby camper. Joseph Norris provided actually some background for the timing of all these events. He saw people outside on the front porch. He came home later that night. When he came home to his camper later that night, he heard a ruckus. And that might have been that initial assault or that would have likely, a jury could have found that that was the initial assault involving Mr. Mooney, involving the victim, Mr. Batiste, and also later then the swinging of the pipe of Mr. Kaufman, the defendant, and Mr. Batiste. But he said later after that that the defendant came to his house and got a flashlight. And then he heard a thump. He heard gurgling. He heard someone yelling stop. And 20 minutes later, he heard or he saw actually the defendant standing behind his camper. And the fact of the matter is that at that point, that's circumstantial evidence of what was going on with the defendant and Mr. Batiste at that time. There could be theories that the jury could have relied on that that body was hit a second time behind the camper, not in front of the camper, that Mr. Kaufman moved the body from the front of the camper to the back of the camper. And I would note that that's consistent with the amount of injuries that the victim suffered in this case because it's not just that the victim suffered one fracture, for example, to his head. The medical examiner was clear, and it's in the record, I believe at page 435, that the victim suffered one long fracture to his head, which is visible in the photographs. But he suffered a tool mark fracture, a second fracture to his head. There were lacerations to his head, but he also suffered extensive injuries to his legs. There were abrasions and lacerations to his legs. And I would note that he suffered fractures to both tibias in his legs. This was clearly not an assault that happened in a moment. And the timing that Joseph Norris provides in essentially unimpeached testimony about what happened in those 20 minutes, all of that is something that the jury could conclude was as a result of the defendant's actions. It is all circumstantial evidence. And again, the question is really only could the jury, through logical and probabilistic reasoning, make those determinations. Counsel, how would you characterize the evidence supporting or being sufficient to support the element of malice aforethought? Well, I would first note that the defendant hasn't actually contested that element at all. But I would note without, and I apologize, without the pattern instruction in front of me, I think one of the ways that you could prove malice aforethought, and I would actually point out that one of the interesting parts about the district court's denial of the Rule 29 motion is that he struggled with the issue of premeditation of malice aforethought, not with a question of proximate cause of the death. But to go back, Judge Federico, to your question, I think the use of the weapon in and of itself is actually circumstantial evidence of malice aforethought. And I think the pattern jury instruction says that when you're using that weapon, when you inflict the blows that he inflicted on Mr. Batiste in the assault which the defendant has conceded, I think it's reasonable to find that there was malice aforethought. There was no accident. There was no excuse. There was no heat of passion that could have explained. Were there some statement evidence about what Mr. Kaufman said to one of the couples as they were leaving the property before anyone saw a pipe about, you know, you may not want to see this or leave if you don't want to see this? Am I remembering that? That's exactly right. Both Tabitha Jones and Anthony Quint Jones both testified and said you should, they testified that he said in essence you should probably go now unless you want to see this. They testified that they believed that something bad was about to happen. And, of course, that is evidence of premeditation, but that doesn't explain, there may be many reasons why a jury decided there wasn't premeditation, but that doesn't, the fact that there wasn't premeditation doesn't mean that there wasn't sufficient evidence for the jury to infer from all the other facts that the defendant committed second-degree murder. I just want to point out, and I'll try to be brief, that in the other cases where this court has held that there was not sufficient evidence for the jury to make findings of guilt, the details of the case and the record were obviously very important, but it was in those cases where there was that logical leap. And so, for example, I would just point this court to the Summers case, the Woody case, which I believe is an unpublished case, but it's very similar, and the Jones case. But in each of those cases, there wasn't evidence that linked up as there is in this case. And, for example, in the Summers case, the defendant was never actually seen in the car that left the bank in a bank robbery. In the Woody case, the defendant was seen kicking the victim, but the victim died by a stab wound. Here, and I just want to make the point that the injuries that the victim suffered were— the medical examiner said they were consistent with a cylindrical pipe. And the jury could also make it a reasonable inference, a logical inference, that the end of the pipe was used potentially to create the tool mark injury. Now, unless the court has other questions, I guess I would just close and finish by saying that I don't believe that there's any logical gap that the jury had to stretch in order to find the defendant guilty. I tried to talk and stick to my argument mainly about the facts that were discovered, but I didn't really even get to the statements as Judge Federico— I think maybe you had brought this up in counsel's argument— that there were also statements, including the defendant's statement to Mr. Norris saying, So there were statements that dovetailed with the rest of the facts of the case. Thank you. Thank you. Just to focus on what actually count to a conviction means, it was aggravated assault with a dangerous weapon with the intent to do bodily harm. And that can be proven just by the threat or attempt to scare somebody into thinking that there was going to be bodily harm. And that was the charge that was brought. Mr. Kaufman does not contest that. And, of course, we cannot contest Ms. Tabitha Jones' testimony about what she saw. But we certainly don't admit that he actually caused serious bodily injury with the pipe. The Joneses saw what they said they saw. With Mr. Norris' testimony, I would just reiterate again, his testimony is consistent that he is there much later than the assault that Tabitha and Anthony Jones testified about. And he didn't actually see Mr. Kaufman hit anybody or have a pipe in his hand. I mean, isn't his testimony consistent, though, with a theory that Mr. Kaufman dealt six strong blows on the porch and figured out later that the victim was in the backyard but not quite finished off, and so he borrows a flashlight and goes out to finish it? It would be consistent with that but inconsistent with the jury's verdict that he was not guilty of first-degree murder. Thank you, Your Honors. Thank you. Case is submitted. Counsel are excused.